# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
### LAFAYETTE-OPELOUSAS DIVISION

**JOHN NOVAK**                                   **CIVIL ACTION NO. 09-1098**

**VERSUS**                                       **JUDGE DOHERTY**

**LAFAYETTE CITY-PARISH**                        **MAGISTRATE JUDGE HANNA**
**CONSOLIDATED**
**GOVERNMENT, ET AL**

## *REPORT AND RECOMMENDATION*

Before the court are three motions to dismiss: Advantage Nursing Services, LLC

and Cynthia Wiltz, LPN's Rule 12(b)(6) Motion to Dismiss for Prematurity and/or

Prescription (Rec. Doc. 25); Advantage Nursing Services, Inc.'s Rule 12(b)(6) Motion to

Dismiss for Prematurity and/or Prescription (Rec. Doc. 34); and Nursefinders, Inc.'s Rule

12(b)(6) Motion to Dismiss Based on Prescription. (Rec. Doc. 41).  The motions are

opposed.

## *Background and Argument of Parties*

Plaintiff filed suit in this Court on July 1, 2009, against the Lafayette City-Parish

Consolidated Government; Jim Craft, individually and in his capacity as Lafayette Police

Department Chief of Police; Michael W. Neustrom, individually and in his capacity as

Sheriff of the Parish of Lafayette; and various Lafayette police officers and Lafayette

sheriff's deputies (hereinafter the "governmental defendants").  The plaintiff also named

as defendants "UNKNOWN HEALTH CARE PROVIDERS:"

1

15.  UNKNOWN HEALTH CARE PROVIDER(S), an/all individual(s) of the full age of majority and, upon information and belief, resident(s) and domiciliary (ies) of the Parish of Lafayette, State of Louisiana who is/are employed by the Lafayette City-Parish Consolidated Government and/or Sheriff Michael W. Neustrom.  This action is brought against the UNKNOWN HEALTH CARE PROVIDER(S) in both their individual and official capacities.  Plaintiff reserves his right to supplement and amend his Complaint once the true identity(ies) of the HEALTH CARE PROVIDER(S) is/are ascertained.[1]

In the petition, plaintiff alleged that after his arrest on July 3, 2008, deputies refused to allow him to bring his prescription Xanax to the Lafayette Parish Correctional Center (LPCC).  Despite repeated requests while held at LPCC for his medication and his advice to defendants that he was at risk for seizures due to cessation of the Xanax, defendants ignored his requests and would not give him any Xanax.  He alleged he suffered a seizure on July 6, 2008, as a result of Xanax withdrawal, which caused him to lose consciousness for four to five hours and caused a vertebral compression fracture of his spine at L-1.  Plaintiff alleged "[t]he failure of the UNKNOWN HEALTH CARE PROVIDER(S) to treat the plaintiff for the above medical condition is a deviation from the standard of care for said provider(s)."[2]  Plaintiff contended defendants were "jointly and severally liable" and prayed for judgment against defendants "jointly, severally and in solido. . . ."[3]

---

[1]*Complaint* (Rec. Doc. 1), p. 5.

[2]*Id.*, ¶ 34.

[3]*Id.,* ¶ 46 and § VII.  Prayer for Relief.

2

On February 18, 2010, plaintiff supplemented and amended his complaint naming

the following as defendants:

15.    The following individual health care providers, all of the full age of
       majority and, upon information and belief, all residents with their
       domiciliary in the Parish of Lafayette, State of Louisiana:
       REGISTERED NURSE TAMMY LATIOLAS (hereinafter "RN
       LATIOLAS") and LPN CYNTHIA GEDWARD WILTZ
       (hereinafter "LPN WILTZ"), both employed by the Lafayette City-
       Parish Consolidated Government and/or Sheriff Michael W.
       Neustrom and/or by Advantage Nursing Services, LLC; LPN MIRNI
       ARCENEAUX (hereinafter "LPN ARCENEAUX") and LPN
       JENNIFER GATES-LANDRY (hereinafter "LPN GATES-
       LANDRY"), both employed by the Lafayette City-Parish
       Consolidated Government and/or Sheriff Michael W. Neustrom
       and/or American Nursing Services, LLC; and LPN KASHONDRA
       HALL (hereinafter "LPN HALL"), employed by the Lafayette City-
       Parish Consolidated Government and/or Sheriff Michael W.
       Neustrom and/or Nursefinders, Inc.; and the following legal entities:
       AMERICAN NURSING SERVICES, INC. ("hereinafter
       "AMERICAN NURSING"), a Louisiana corporation organized
       under the laws of Louisiana; ADVANTAGE NURSING
       SERVICES, LLC (hereinafter "ADVANTAGE NURSING"), a
       foreign Limited Liability Company organized under the laws of
       Delaware; and NURSEFINDERS, INC. (hereinafter
       "NURSEFINDERS"), a foreign corporation organized under the
       laws of Texas, capable of being sued in the State of Louisiana. [4]

At a telephone status conference, the parties informed the court that defendant

American Nursing Services, LLC (American), who employed nurses Mirni Arceneaux

and Jennifer Gates-Landry was in bankruptcy. [5]   Due to the bankruptcy proceedings of

_____

[4]*First Supplemental and Amended Complaint* (Rec. Doc. 20), ¶ 15.

[5]*Minutes of Telephone Status Conference* (Rec. Doc. 39).

3

American the court stayed the litigation.[6]  The stay was subsequently partially lifted solely for the purpose of proceeding on the motions to dismiss.[7]

Advantage Nursing Services, Inc., Advantage Nursing Services, LLC, and Cynthia Wiltz (hereinafter collectively referred to as "Advantage") filed almost identical motions.[8]

Advantage argues that it is a qualified health care provider under the Louisiana Medical Malpractice Act (MMA) and pursuant to La. R.S. 40:1299.47, plaintiff is required to bring his claim before a medical review panel (panel) prior to filing suit. Plaintiff did not do so within one year from the date of the alleged medical malpractice as required by La. R.S. 9:5628; therefore, Advantage argues, plaintiff's claims have prescribed.  Alternatively, his claims are premature as they have not been presented to a panel prior to filing suit as required by La. R.S. 40:1299.47.

Similarly, defendant Nursefinders, Inc. argues the claims against it are prescribed pursuant to La. R.S. 9:5628.[9]  Nursefinders argues it is a health care provider subject to prescriptive periods of La. R.S. 9:5628.  However, Nursefinders agrees it is not a "qualified" health care provider under the MMA subject to La. R.S. 40:1299.47.

---

[6]*Id.*

[7]*Minutes of Telephone Status Conference* (Rec. Doc. 45).

[8]Advantage Nursing Services, Inc. merged with another company to form Advantage Nursing Services, LLC.  (Rec. Doc. 35). Its other named employee, Tammy Latiolais, is deceased.  (See Rec. Doc. 45).

[9]Nursefinders states its employee, Kashandra Hall, has not been served, but these arguments are applicable to her as well.

Therefore, unlike Advantage, plaintiff was not required to file a claim before a medical review panel prior to filing suit.  As a result, while the claims against it are not premature, they are prescribed because suit was filed against it more than one year after the alleged malpractice occurred.

Both Advantage and Nursefinders argue suit against the governmental defendants did not interrupt prescription on the claims against them, as the Louisiana Civil Code articles regarding interruption of prescription as to solidary obligors do not apply to medical malpractice claims.[10]  Plaintiff agrees, stating "Novak is not alleging in this Opposition, that his lawsuit against the originally named defendants, interrupted prescription against the defendant health care providers who have filed these Motions to Dismiss."[11]

Plaintiff states he filed claims against Advantage before a medical review panel on May 11, 2010,  and concedes his claims against Advantage for medical malpractice in

_____

[10]In support of this position, defendants cite Billiot v. American Hospital Supply Corp., 721 F.2d 512 (5th Cir. 1983); Mitchell v. Rehabilitation Institute of New Orleans, Inc., 953 So.2d 75 (La.App. 4 Cir. 2007); Parrish v. Superior Energy Services, LLC, 2008 WL 1988800 (E.D.La. 2008); LeBreton v. Rabito, 714 So.2d 1226, 1228 (La. 1998); Bush v. National Health Care of Leesville, 939 So.2d 1216 (La. 2006); Yen v. Avoyelles Parish Police Jury, 971 So.2d 536 (La. App. 3d Cir. 2007); Landry v. Hebert, 2008 WL 2230175 (W.D. La. 2008)(unpublished); Borel v. Young, 989 So.2d 42, 51 (La. 2007); Williams v. Jackson Parish Hospital, 798 So.2d 921, 927 (La. 2001); David v. Our Lady of the Lake Hospital, Inc., 849 So.2d 38, 48 (La. 2003).

[11]Novak's Memorandum in Opposition to the Defendants' Rule 12(b)(6) Motion to Dismiss (Rec. Doc. 47), p. 20.

federal court are premature.[12]   Regarding his claims against Nursefinders, plaintiff agrees

the claims are not premature, as Nursefinders is not a qualified health care provider under

the MMA and he was not required to file a claim before a medical review panel prior to

filing suit in court.

 In opposition to the prescription defense in both motions, plaintiff relies on the

doctrine of *contra non valentum* to excuse the tardy filing.  Plaintiff argues the names of

the health provider defendants and the fact they were not employees of the governmental

defendants were not known by plaintiff until after he filed suit on July 2, 2009 and

initiated discovery.  Plaintiff argues he did not learn of the names and employers of the

nurses until December 18, 2009 and did not know they were supposed to be providing

him with medical care until then.  Plaintiff argues he filed his amended petition on

February 18, 2010 well within one year of the discovery of their malpractice.[13]   Plaintiff

argues he "was unaware that he was being treated by a health care provider" as "[t]here

was no distinction made in Novak's case between health care providers and deputies."[14]

Plaintiff argues "Novak was unable to bring a claim of malpractice against the movers

_____

[12]In his memorandum in opposition, plaintiff states he filed his claim before medical
review panel on May 11, 2009.  However, this is a typographical error, as the claim before the
medical review panel was actually filed on May 11, 2010.  See Exhibit K to *Novak's
Memorandum in Opposition to the Defendants' Rule 12(b)(6) Motion to Dismiss* (Rec. Doc. 47-
16).

[13]*Id.,* p. 15.

[14]*Id.*, p. 22.

until he knew they had done something wrong" and he "had no reasonable way of knowing that these health care providers were responsible in part for his injury."[15] Plaintiff  attached evidence in support of his opposition in the form of an affidavit, medical records, Rule 26 disclosures and discovery responses.

In reply, defendants reassert their argument that the claims against them made in the First Supplemental and Amended Petition are prescribed on their face because they were filed more than one year after the alleged acts of malpractice and plaintiff has not introduced evidence sufficient to justify application of the  "discovery rule" of the *contra non valentem* doctrine embodied in La. R.S. §9:5628.  That is , prescription does not begin to run "where the cause of action is not known or reasonably knowable by the plaintiff and when the damages are not immediately apparent upon commission of the alleged malpractice."[16]   Defendants argue plaintiff clearly knew he had a malpractice cause of action and the doctrine of *contra non valentem* is inapplicable because the doctrine only applies when the cause of action is unknown, not the identity of the defendant.

Moreover, defendants argue, "for *contra non valentum* to apply, the plaintiff's ignorance of his cause of action cannot be attributable to his own willfulness or neglect,

---

[15]*Novak's Memorandum in Opposition to the Defendants' Rule 12(b)(6) Motion to Dismiss* (Rec. Doc. 47), pgs.20, 22.

[16]*Nursefinders' Reply Memorandum to Plaintiff's Opposition to Defendants' Rule 12(b)(6) Motion to Dismiss* (Rec. Doc. 49), p. 2, citing Carter v. Haygood, 892 So. 2d 1261, 1268 (La. 2005).

as a plaintiff is deemed to know what he could have learned by reasonable diligence."[17]

Defendants argue plaintiff acted unreasonably in failing to identify the health care

providers and their employers within the one year period, as plaintiff could have "simply

asked LPCC for the information, served a subpoena for the records, or issued a request to

the Sheriff pursuant to Louisiana's open records laws."[18]  In addition, at least one of the

nurse's names was included in the medical records sent to plaintiff's physician, Dr.

Ahmadi, in July or August of 2008.[19]  However, plaintiff never tried to clarify the nurse's

identity, role, or employer or any of the other health care provider defendants, because,

defendants state, he wrongly assumed they were employees of the governmental

defendants.

### *Applicable Law and Discussion*

<u>*Summary Judgment*</u>

As an initial matter, the undersigned will convert the motions to dismiss into

motions for summary judgment.  If in a motion to dismiss for failure to state a claim,

matters outside the pleadings are presented to and not excluded by the court, the motion

shall be treated as a motion for summary judgment under Rule 56. <u>Washington v. Allstate</u>

---

[17]*Id.*, citing <u>Renfroe v. State ex rel. Dept. of Transp. and Development</u>, 809 So. 2d 947 (La. 2002).

[18]*Id.*, p. 4.

[19]*Reply to Plaintiff's Opposition to Rule 12(b)(6) Motion to Dismiss for Prematurity and/or Prescription filed by Advantage and Wiltz* (Rec. Doc. 48), p. 6.

Ins. Co., 901 F.2d 1281, 1284 (5th Cir. 1990);  Isquith for and on behalf of Isquith v.

Middle South Utilities, Inc., 847 F.2d 186, 193 n. 3 (5th Cir.1988)(The court has

complete discretion, based on a determination of whether or not the proffered material

and the resulting conversion from the Rule 12(b)(6) to the Rule 56 procedure is likely to

facilitate the disposition of the action, to accept  material beyond the pleadings that is

offered in conjunction with a Rule 12(b)(6) motion).

　　　Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is

appropriate when there is no genuine dispute as to any material fact and the moving party

is entitled to judgment as a matter of law.  A fact is material if proof of its existence or

nonexistence might affect the outcome of the lawsuit under the applicable substantive law

in the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Minter v. Great

American Ins. Co. of New York, 423 F.3d 460, 465 (5th Cir. 2005).  A genuine issue of

material fact exists if a reasonable jury could render a verdict for the nonmoving party.

Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008), citing Anderson v. Liberty

Lobby, Inc., 477 U.S. at 252.

　　　The party seeking summary judgment has the initial responsibility of informing the

court of the basis for its motion, and identifying those parts of the record that it believes

demonstrate the absence of a genuine issue of material fact.  Washburn v. Harvey, 504

F.3d 505, 508 (5th Cir. 2007), citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party carries its initial burden, the burden shifts to the nonmoving party to

demonstrate the existence of a genuine issue of a material fact.  Id.  All facts and justifiable inferences are construed in the light most favorable to the nonmovant. Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008), citing Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. at 255.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim. Norwegian Bulk Transport A/S v. International Marine Terminals Partnership, 520 F.3d 409, 412 (5th Cir. 2008), citing Celotex Corp. v. Catrett, 477 U.S. at 325.  The motion should be granted if the non-moving party cannot produce evidence to support an essential element of its claim.  Condrey v. SunTrust Bank of Georgia, 431 F.3d 191, 197 (5th Cir. 2005).

*Substantive Law*

Plaintiff alleged in his complaint that "[t]he failure of said UNKNOWN HEALTH CARE PROVIDERS(S) to treat the plaintiff for the above medical condition is a deviation from the standard of care for said providers(s)."  Unlike the governmental defendants, plaintiff's claims against Advantage and Nursefinders are not founded in § 1983 as neither "[u]nsuccessful medical treatment" nor "[m]ere negligence, neglect or medical malpractice" give rise to a § 1983 cause of action.  Varnado v. Lynaugh, 920 F.2d

10

320, 321 (5th Cir.1991)(citing <u>Johnson v. Treen</u>, 759 F.2d 1236, 1238 (5th Cir.1985) and

<u>Fielder v. Bosshard</u>, 590 F.2d 105, 107 (5th Cir.1979)).  However, the court has

supplemental jurisdiction under 28 U.S.C. § 1367(a) as the state law claims are part of the

same case or controversy under Article III of the United States Constitution.[20]

Therefore, the undersigned  will apply Louisiana state substantive law to the claims

against Advantage and Nursefinders. See <u>United Mine Workers of America v. Gibbs</u>, 383

U.S. 715, 725-27, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

The parties have addressed plaintiff's claims against these defendants as arising

out of medical malpractice and the undersigned finds the same.  Therefore, the applicable

substantive law is Louisiana law governing prescription and the suspension and

interruption of prescription of medical malpractice claims.

<u>Prescription</u>

Prescription in medical malpractice actions is governed by the provisions of La.

R.S. 9:5628, which provides in relevant part as follows:

> A. No action for damages for injury or death against any physician,
> chiropractor, nurse, licensed midwife practitioner, dentist, psychologist,
> optometrist, hospital or nursing home duly licensed under the laws of this
> state, or community blood center or tissue bank as defined in R.S.
> 40:1299.41(A), whether based upon tort, or breach of contract, or
> otherwise, arising out of patient care shall be brought unless filed within

---

[20]See <u>Landry v. Hebert</u>, 2008 WL 2230175 (W.D. La.2008)(unpublished).   Moreover, it
appears diversity jurisdiction pursuant to 28 U.S.C. §1332 exists between plaintiff and the
medical provider defendants. Plaintiff alleges he is a citizen of Alabama, the medical provider
defendants appear to be citizens of States other than Alabama, and the amount in controversy
exceeds $75,000.

one year from the date of the alleged act, omission, or neglect, or within one year from the date of discovery of the alleged act, omission, or neglect; however, even as to claims filed within one year from the date of such discovery, in all events such claims shall be filed at the latest within a period of three years from the date of the alleged act, omission, or neglect.

* * *

C.  The provisions of this Section shall apply to all healthcare providers listed herein or defined in R.S. 40:1299.41 *regardless of whether the healthcare provider avails itself of the protections and provisions of R.S. 40:1299.41 et seq.*, by fulfilling the requirements necessary to qualify as listed in R.S. 40:1299.42 and 1299.44.  (Emphasis added).

Thus, La. R.S. 9:5628 requires a medical malpractice action to be filed within one year and is applicable to all listed healthcare providers, whether they are "qualified" health care providers under the MMA, La. R.S. 40.1299.41, et seq., or not.  The Louisiana Supreme Court explained as follows:

> Although § 5628 does not contain the term "malpractice," it is well settled that this statute was enacted to provide a special prescriptive period for medical malpractice actions. This special prescriptive period was enacted in 1975 (Act 808) during the same legislative session as the MMA (Act 817). The following year the Legislature adopted a similar act for state providers, the Medical Liability for State Services Act, La. R.S. 40:1299.39, et seq. (the MLSSA). Significantly, the Legislature did not place § 5628 (the prescription statute) within Title 40, where both the MMA and MLSSA are located; rather, it placed it in Title 9 as a Civil Code ancillary. This placement apparently was selected so that § 5628 would be a separate provision, not tied to a health care provider's status as a qualified provider under either the MMA or the MLSSA. Indeed, § 5628 is neutral on its face, applying regardless of a provider's status as qualified or unqualified.

Williams v. Jackson Parish Hospital, 798 So.2d 921, 927 (La. 2001).

Therefore, the prescriptive period of La. R.S. 9:5628 is applicable to both Advantage, a qualified health care provider, and to Nursefinders, who is not a qualified

12

health care provider under the MMA.

Generally, prescription statutes are strictly construed against prescription and in favor of the claim sought to be extinguished by it.  <u>Bouterie v. Crane</u>, 616 So.2d 657, 660 (La. 1993). When a party asserts a prescription issue, the burden of proof rests with the party asserting prescription unless the plaintiff's claim is prescribed on its face. <u>Titus v. IHOP Restaurant, Inc.</u>, 25 So.3d 761, 764 (La. 2009)(citations omitted).   If the plaintiff's claim is prescribed on its face, the burden of proof shifts to the plaintiff to show otherwise. <u>Id</u>.

It is undisputed that Advantage is a qualified provider covered by the MMA.  As such, plaintiff was required to file his claims against Advantage before a medical review panel prior to filing suit in court.  LSA-R.S. 40:1299.47 A.(1)(a) reads in pertinent part as follows:

> All malpractice claims against health care providers *covered by this Part* . . . shall be reviewed by a medical review panel established as hereinafter provided for in this Section. (Emphasis added).

LSA-R.S. 40:1299.47 B.(1)(a)(I) reads as follows:

> No action against a health care provider *covered by this Part*, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section. (Emphasis added).

To the contrary, claims against non-qualified health care providers, such as Nursefinders, are not required to be filed before a medical review panel prior to suit in court.  Therefore, while the claims against Advantage and Nursefinders are both subject

13

to the one year prescriptive period of La. R.S. 9:5628, only the claims against Advantage were required to be filed before a medical review panel prior to filing suit.   Thus, plaintiff's claims against Advantage must have been filed before a medical review panel within one year following the date of alleged malpractice, or by July 8, 2009.  See Mitchell v. Rehabilitation Institute of New Orleans, Inc., 953 So.2d 75 (La.App. 4 Cir. 2007).

No claim was filed before a medical review panel by July 8, 2009, against Advantage or any health care provider in this action.  Instead, suit was brought against "unknown health care providers" in this Court on July 1, 2009.  On February 18, 2010, Advantage was sued by name in this Court.  The claim against Advantage was not filed before a medical review panel until May 11, 2010, almost two years after the alleged malpractice.  Therefore, the undersigned finds plaintiff's claims against Advantage are prescribed on their face.

Plaintiff was not required to file a claim against Nursefinders with a medical review panel prior to filing suit, as Nursefinders was not a qualified health care provider under the MMA.  However, under LSA-R.S. 9:5628, plaintiff was required to file suit against Nursefinders by July 8, 2009.  Plaintiff filed suit against "unknown health care providers" on July 1, 2009.  However, plaintiff's suit against Nursefinders was not filed in this Court until February 18, 2010.[21]  Therefore, the undersigned finds plaintiff's

_____

[21]Plaintiff has not expressly argued the applicability of Rule 15(c) to allow the amended claim to relate back, but the undersigned finds it unavailing:

14

claims against Nursefinders are also prescribed on their face.

Having found the claims prescribed on their face, plaintiff has the burden of proving that his claims have not prescribed.  A plaintiff may satisfy this burden by demonstrating suspension, interruption, or renunciation of prescription has occurred. LeBreton v. Rabito, 714 So.2d 1226 (La. 1998).  There is no argument that renunciation has occurred.  Therefore, plaintiff may satisfy his burden only by showing prescription of his claims against Advantage and/or Nursefinders was either suspended or interrupted.

*Suspension of Prescription under the Provisions of the MMA*

The MMA has special provisions that provide for suspension of prescription when a claim is filed before a medical review panel.  When a claim is filed before a medical

---

Rule 15(c) provides in relevant part:
An amendment of a pleading relates back to the date of the original pleading when ... within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.
Fed.R.Civ.P. 15(c).

The time period allowed by Rule 4(m) for service of the summons and complaint is 120 days after the filing of the complaint. See Fed.R.Civ.P. Rule 4(m).   The amended complaint against Nursefinders  was served more than 120 days after filing of the original complaint against the "unknown health care providers."  Moreover, Rule 15(c) "is meant to allow an amendment changing the name of a party to relate back to the original complaint only if the change is the result of an error, such as a misnomer or misidentification." Jacobsen v. Osborne, 133 F.3d 315, 320 (5th Cir.1998) (citation omitted). "[F]ailing to identify individual defendants cannot be characterized as a mistake." Id. (citing Barrow v. Wethersfield Police Dept., 66 F.3d 466, 469 (2nd Cir.1995)).  Therefore, the undersigned finds Fed. R. Civ. P. 15(c) cannot be used to allow the amended pleading to relate back to plaintiff's original complaint.

review panel prescription is suspended for all joint and solidary obligors or joint tortfeasors, whether they are health care providers, qualified or not, and even if they are not health care providers at all:

> The filing of the request for a review of a claim shall suspend the time within which suit must be instituted, in accordance with this Part, until ninety days following notification, by certified mail, as provided in Subsection J of this Section, to the claimant or his attorney of the issuance of the opinion by the medical review panel, in the case of those health care providers covered by this Part, or in the case of a health care provider against whom a claim has been filed under the provisions of this Part, but who has not qualified under this Part, until ninety days following notification by certified mail to the claimant or his attorney by the board that the health care provider is not covered by this Part. The filing of a request for review of a claim shall suspend the running of prescription against all joint and solidary obligors, and all joint tortfeasors, including but not limited to health care providers, both qualified and not qualified, to the same extent that prescription is suspended against the party or parties that are the subject of the request for review. Filing a request for review of a malpractice claim as required by this Section with any agency or entity other than the division of administration shall not suspend or interrupt the running of prescription. All requests for review of a malpractice claim identifying additional health care providers shall also be filed with the division of administration.

LSA-R.S. 40:1299.47(A)(2)(a).

While only claims against qualified health care providers must be brought before a panel prior to suit, *if* a claim is brought against a non-qualified health care provider before a medical review panel, whether out of an abundance of caution or by mistake, the non-qualified health care provider is nonetheless subject to the MMA provisions governing the suspension of prescription:

16

> A health care provider who fails to qualify under this Part is not covered by the provisions of this Part and is subject to liability under the law without regard to the provisions of this Part. If a health care provider does not so qualify, the patient's remedy will not be affected by the terms and provisions of this Part, except as hereinafter provided with respect to the suspension and the running of prescription of actions against a health care provider who has not qualified under this Part when a claim has been filed against the health care provider for review under this Part.

LSA-R.S. 40:1299.41(D).

When a claim against a qualified health care provider, such as Advantage, is filed before a medical review board, prescription against non-qualified but solidarily liable health care providers is suspended under certain provisions of the MMA:

> Notwithstanding the provisions of Subsection D, the running of prescription against a health care provider who is answerable in solido with a qualified health care provider against whom a claim has been filed for review under this Part shall be suspended in accordance with the provisions of R.S. 40:1299.47(A)(2)(a).

LSA-R.S. 40:1299.41(G).

Plaintiff was required to file a claim against Advantage before the medical review panel within one year of the alleged malpractice.  Plaintiff was not required to file a claim before the medical review panel against Nursefinders.  However, timely filing a request for review by a medical review panel as to either one of them would have suspended prescription as to both.  See LSA-R.S. 40:1299.47(A)(2)(a).  Although plaintiff ultimately filed a claim before the medical review panel against Advantage on May 11, 2010, an untimely panel request filed more than one year after the alleged malpractice is ineffective to suspend prescription, as prescription may not be suspended after it has run.

Geiger v. State ex rel. Dept. of Health and Hosp., 815 So.2d 80, 83 (La. 2002), citing

Rizer v. American Sur. & Fidelity Ins. Co., 669 So.2d 387, 390-91 (La. 1996).  Therefore,

the undersigned finds the suspension provisions of the MMA are inapplicable and

unavailable to suspend prescription of plaintiff's claims against either Advantage or

Nursefinders.

*Suspension of Prescription Under the Doctrine of Contra Non Valentum*

The doctrine of *contra non valentum* was created by the courts as a suspensive

exception to general rules of prescription.  Wimberly v. Gatch, 635 So.2d 206, 211 (La.

1994).  In Wimberly, the court outlined four basic situations where *contra non valentum*

is available:

> Generally, the doctrine of contra non valentem suspends prescription where
> the circumstances of the case fall into one of the following four categories:
>
> 1. Where there was some legal cause which prevented the courts or their
> officers from taking cognizance of or acting on the plaintiff's action;
>
> 2. Where there was some condition coupled with a contract or connected
> with the proceedings which prevented the creditor from suing or acting;
>
> 3. Where the debtor himself has done some act effectually to prevent the
> creditor from availing himself of his cause of action; and
>
> 4. Where some cause of action is not known or reasonably knowable by the
> plaintiff, even though his ignorance is not induced by the defendant.

Wimberly, 635 So.2d at 211.  (Citations omitted).

Under the fourth category, known as the  "discovery rule," prescription is

suspended when the claimant is not aware of the facts giving rise to his or her cause of

18

action against the particular defendant until the tort victim discovers or should have discovered the facts upon which his or her cause of action is based. In re Medical Review Panel of Howard, 573 So.2d 472, 474 (La. 1991), citing Lott v. Haley, 370 So.2d 521 (La.1979). The discovery rule is embodied in La.R.S. 9:5628, which provides an action for damages against health care providers arising out of patient care be brought within one year from the date of the act or omission or within one year of the date of discovery of the act or omission.  In re Medical Review Panel of Howard, 573 So.2d at 474.

The undersigned finds the doctrine of *contra non valentum* is unavailable to suspend prescription on plaintiff's claims against defendants.  The only category of *contra non valentum* relevant to this matter is the "discovery rule."  Contrary to the defendants' arguments, the discovery rule applies not only to the discovery of a cause of action, it has been jurisprudentially extended to the discovery of the proper defendant. See In re: Medical Review Panel of Howard, 573 So. 2d at 475.  However, the ignorance of the cause of action, and therefore, the identity of the defendant,  must not be willful, negligent or unreasonable. In re Medical Review Panel of Howard, 573 So.2d at 474, citing Young v. Clement, 367 So.2d 828 (La.1979).

Plaintiff's physician Dr. Ahmadi requested medical records in July or August 2008, after plaintiff's release from jail.[22]  On the records, although the undersigned agrees

---

[22]See Affidavit of John Novak, Exhibit A to *Novak's Memorandum in Opposition to the Defendants' Rule 12(b)(6) Motion to Dismiss* (Rec. Doc. 47-3).

its not clearly legible, is the signature "T.Latiolais" three times in two places.[23]   In his

affidavit, plaintiff does not state nor in his memorandum does he contend he ever made

any attempt to identify the health care providers until after suit was filed and the

prescriptive period had run.  For these reasons, the undersigned finds the plaintiff's

failure to discover the identities of the health care providers unreasonable and negligent

under the circumstances of this case.

In addition, the undersigned has found no authority that the doctrine can be applied

to suspend the necessity of timely filing a medical malpractice *claim,* even if the identity of

the health care provider is unknown, before a medical review panel. Plaintiff clearly knew

the defendants were in fact health care providers and knew he had a cause of action against

them for medical malpractice.  Plaintiff listed them as  "unknown health care providers" and

alleged their treatment, or failure to treat, plaintiff was "a deviation from the standard of care

for said provider(s)."[24]. That is, unlike most *contra non valentum* cases where a plaintiff is

unaware he has a claim, plaintiff in this situation clearly knew he had a malpractice claim.

However, no claim was filed before a medical review panel, even against "unknown health

care providers," until May 11, 2010.

In Ferrara v. Starmed Staffing, LP, 50 So.2d 861 (La.App. 4 Cir. 2010), the court

found the doctrine of *contra non valentum* suspended prescription against a Jane Doe

---

[23]See Exhibit B to  *Novak's Memorandum in Opposition to the Defendants' Rule 12(b)(6) Motion to Dismiss*  pgs. 1and 5.

[24]*Complaint*, ¶ 34.

defendant and allowed the properly identified defendant, Ms. Waddell, to be substituted as a defendant in her place more than one year after the alleged malpractice.  However, the Jane Doe claim was filed within one year of the alleged malpractice before a medical review panel.  Although Ms. Waddell was eventually determined not to be a qualified provider, the court found *contra non valentum* allowed suspension of prescription until Jane Doe was identified.

The undersigned cannot find plaintiff's alleged inability to determine the identity of the defendants will excuse his failure to timely file a known medical malpractice claim before a medical review panel, even if he did not know whether they were qualified health care providers.  As discussed above, even if a defendant health care provider is not qualified, a claim filed erroneously before a medical review panel still works to suspend prescription under the MMA.  Therefore, *contra non valentum* cannot save plaintiff's claims against Advantage, which were not only brought late against the proper defendants in court,  but also late before the medical review panel even though it was clear the action was based in medical malpractice. Since it cannot operate to suspend prescription as to Advantage under the MMA, it cannot operate to suspend prescription against Nursefinders.

For the reasons given above, the undersigned finds the doctrine of *contra non valentum* unavailable to suspend prescription of plaintiff's claims against Advantage and Nursefinders.

*Interruption of Prescription*

21

Plaintiff filed his claims against Advantage and Nursefinders in this Court on February 18, 2010, and against Advantage before a medical review panel on May 11, 2010, all more than one year after the alleged malpractice.  However, the claims against the governmental defendants, their alleged solidary obligors, were timely filed in this Court on July 1, 2009. Thus, if the general codal provisions of Louisiana law are applicable, prescription was interrupted on the claims against Advantage and Nursefinders.[25]

All parties in memoranda agreed that suit against the governmental defendants did not interrupt prescription on the claims against the health care providers, interpreting Louisiana law as holding that the Louisiana Civil Code articles regarding interruption of prescription as to solidary obligors do not apply to medical malpractice claims.  However, the undersigned does not find this broad statement clearly applicable to plaintiff's claims against both of these defendants.

After independent research, the undersigned finds no decision of the Louisiana Supreme Court which squarely addresses these two issues:  1) Does a timely filed suit against a non-health care provider defendant alleged to be a solidary obligor interrupt prescription as to a health care provider defendant covered by the MMA?; and, 2) Does a timely filed suit

_____

[25]La. C.C. art. 3462 provides that prescription is interrupted when the obligee commences an action against the obligor in a court of competent jurisdiction and venue.
La. C.C. art. 1799 provides that the "interruption of prescription against one solidary obligor is effective against all solidary obligors, and their heirs."
La. C.C. art. 3503 provides that "[w]hen prescription is interrupted against a solidary obligor, the interruption is effective against all solidary obligors and their successors."

against a non-health care provider defendant alleged to be a solidary obligor interrupt prescription as to a health care provider defendant not covered by the MMA?

While there is authority that the specific suspension provisions of the MMA trump the general codal provisions on interruption of prescription when both are called into play,[26] the undersigned can find no clear answer on whether the timely filing of a suit against a solidarily liable non-health care provider interrupts prescription against a health care provider subject to the provisions of the MMA when no timely claim was submitted before a medical review panel. Likewise, there is no clear answer whether a timely filed suit by against a solidarily liable non-health care provider interrupts prescription against a health care provider not subject to the provisions of the MMA when no claim was timely filed against it or any other health care provider before a medical review panel.  In other words, the undersigned can find no clear authority on the applicability of the Louisiana codal articles to *interruption* of prescription in a medical malpractice case, when the *MMA suspension* provisions are not triggered.

Therefore, in deciding this case, the Court must make an Erie guess as to what the Louisiana Supreme Court would most likely hold in this situation. Herrmann Holdings Ltd. v. Lucent Technologies, Inc., 302 F.3d 552, 558 (5th Cir.2002) (citing Barfield v. Madison County, Miss., 212 F.3d 269, 271-72 (5th Cir.2000)). The undersigned must "attempt to

---

[26]See LeBreton v. Rabito, 97-2221 (La.7/8/98), 714 So.2d 1226, 1230-31; Bush v. National Health Care of Leesville, 939 So.2d 1216 (La. 2006); Borel v. Young, 989 So.2d 42 (La. 2007)(on rehearing); Warren v. Louisiana Medical Mut. Ins. Co., 21 So. 3d 186 (La. 2008).

predict state law, not to create or modify it." Id., citing United Parcel Service, Inc. v. Weben Industries, Inc., 794 F.2d 1005, 1008 (5th Cir.1986).  "In making an *Erie* guess, we defer to intermediate state appellate court decisions 'unless convinced by other persuasive data that the highest court of the state would decide otherwise.'" Id., citing First Nat'l Bank of Durant v. Trans Terra Corp. Intern., 142 F.3d 802, 809 (5th Cir.1998).

1)   *Does a timely filed suit against a non-health care provider defendant alleged to be a solidary obligor interrupt prescription as to a health care provider defendant covered by the MMA?*

Federal district courts in the Eastern and Western District of Louisiana have previously wrestled with this issue.  In two unpublished decisions,  Parrish v. Superior Energy Services, LLC, 2008 WL 1988800 (E.D.La. 2008) and Landry v. Hebert, 2008 WL 2230175 (W.D.La.2008), the courts determined there was a split in Louisiana appellate courts in answer to this question.[27]

The seminal case on application of the codal articles to interruption and the MMA

---

[27]The court in Parrish found the Louisiana Second and Fifth Circuit Courts of Appeal had answered the question affirmatively in Coleman v. Acromed Corp., 764 So. 2d 81, 84 (La.App. 2 Cir. 1999) and Jarrell v. West Jefferson Medical Center, 956 So.2d 5 (La.App. 5 Cir. 2007), and the Third and Fourth Circuits had found to the contrary in Mitchell v. Rehab. Inst. Of New Orleans, Inc., 953 So.2d 75, 80 (La.App.4 Cir. 2007); Yen v. Avoyelles Parish Police Jury, 971 So.2d 536, 539-40 (La.App. 3 Cir. 2007); and Borel v. Young, 947 So.2d 824 (La.App. 3 Cir. 2006).  (The undersigned notes the Parrish court mistakenly thought Coleman was a First Circuit case.  However, it is a Second Circuit case). The court in Landry found the Louisiana First and Second Circuits had answered the question affirmatively in Geiger v. State ex. rel. Dept. of Health and Hosp., 812 So. 2d 669 (La.App. 1 Cir. 2001) and Coleman v. Acromed Corp., 764 So. 2d 81, 84 (La.App. 2 Cir. 1999) and negatively in the Third and Fourth Circuits, citing Mitchell v. Rehab. Inst. of New Orleans, Inc., 953 So. 2d 75 (La.App. 4 Cir. 2007) and Yen v. Avoyelles Parish Police Jury, 971 So.2d 536 (La.App. 3 Cir. 2007).

provisions applicable to suspension of prescription in medical malpractice cases was

LeBreton v. Rabito, 714 So.2d 1226 (La. 1998).  In LeBreton, plaintiffs had timely filed suit

in court and before a medical review panel against medical malpractice defendants subject

to the MMA.  The medical review panel issued its decision on August 14, 1996, but plaintiff

did not re-file her suit in court until February 3, 1997, beyond the 90 day suspensive period

provided by La.R.S. 40:1299.47(A)(2)(a).  The district and appellate courts found the general

codal article on interruption of prescription, La.Civ.Code art. 3462, interrupted prescription

of plaintiffs' claims.   However, the Louisiana Supreme Court found the specialized

provisions on suspension of prescription in the MMA applied to the exclusion of the general

codal articles on interruption of prescription.  The reasoning of the LeBreton court was as

follows:

> Actions for medical malpractice against certain health care providers, such as the defendants herein, are governed by special laws, Part XXIII of Chapter 5, Miscellaneous Health Provisions of La.R.S. 40:1299.41, et seq. and La.R.S. 9:5628, which delineate the liberative prescription applicable to actions for medical malpractice under Title 40. It specifically provides, inter alia, that the filing of a medical malpractice claim with the board only suspends the time within which suit must be instituted in a district court. On the other hand, if the general codal articles of 3466 and 3472 apply, as the lower courts found in the present case in keeping with the Hernandez decision, then the prescription and suspension provisions provided in the Medical Malpractice Act will be written out. Therein lies the conflict. If we let this ruling stand, we will condone and encourage the technique of unnecessarily prolonging malpractice litigation by a lesser standard. The party who improperly files a premature medical malpractice suit without first filing the claim with the board for a medical review panel, and whose suit is subsequently dismissed without prejudice, gains an additional year of prescription in addition to the suspended time provided by the Medical Malpractice Act, within which to file the suit anew.
>
> * * *

25

> In the present case, by virtue of the legislative enactment calling for the necessity of a medical review panel prior to submission of the case to the district court, the legislature by special provision for the inclusion of suspension excluded the applicability of interruption of prescription.
>
> * * *
>
> Thus, considering the doctrinal underpinnings for the existence of the rules of suspension, it is evident that there is no need for the general rules of interruption of prescription to combine with suspension to synergistically benefit the plaintiff.

LeBreton, 714 So. 2d at 1229 - 31.

After LeBreton, most appellate courts applied its general holding that the MMA's suspension provisions were not to be combined with the general codal articles on interruption of prescription in many varied factual situations to find cases prescribed under the MMA's suspension provisions. A few courts, however, still applied the general codal articles on interruption.

In Parrish, plaintiff timely filed suit in Louisiana state court against the owner/operator of a platform and the platform medic for negligence and malpractice sustained on or about April 29, 2006. The lawsuit was removed to federal court. On May 11, 2007, the plaintiff named the medic's employer who was also a health care provider. Plaintiff alleged all defendants were solidarily liable. The court dismissed the claims against the medical providers without prejudice as it was undisputed they were subject to the MMA and no claim had been filed before the medical review panel. Plaintiff filed a claim before a medical review panel on July 31, 2007, i.e. more than a year after the alleged malpractice. A motion for summary judgment based on prescription followed.

The court framed the issue as "whether a plaintiff can interrupt prescription against a health care provider accused of malpractice by filing a timely lawsuit against the provider's alleged joint tortfeasors or solidary obligors."  Parrish, at *4.  The undersigned notes the Parrish court framed the issue broadly, as the health care providers before it were undisputedly qualified and subject to the provisions of the MMA.

In Landry, plaintiff alleged that while he was incarcerated from June 29 to December 24, 2004, he suffered injuries caused by defendants who withheld medical treatment.  He filed his complaint in federal court on February 28, 2005 against various "governmental" defendants alleging, *inter alia,* violations of 42 U.S.C. § 1983.  On October 17, 2006, plaintiff filed a motion to amend to add allegations of medical malpractice against the hospital, which was granted.  On January 9, 2007, plaintiff filed his claim against the hospital before the medical review panel.  On January 31, 2008, the medical review panel issued its opinion.  The hospital filed a motion for summary judgment based on prescription.

In Landry, the court framed the issue more specifically as "whether a timely filed suit against a solidary obligor interrupts prescription as to a defendant covered by the MMA."  Landry, at *3.

The cases examined in Parrish and Landry that found prescription interrupted on claims against qualified health care providers when a claim was timely filed against an alleged solidarily liable non-health care provider were in the Louisiana First, Second and

27

Fifth circuits.

In Coleman v. Acromed Corp., 764 So.2d 81 (La.App. 2 Cir. 1999), plaintiff timely filed claims before a medical review panel against medical providers and a products liability claim in court against the manufacturer of a surgical implement and its designer.  The medical review panel issued an opinion favorable to medical providers on September 17, 1997.  Plaintiff sought to add them to the district court suit on June 8, 1998, which was untimely under the suspension provisions of the MMA.  The court distinguished LeBreton, finding in LeBreton the defendants were all health care providers subject to the MMA and therefore filing a premature lawsuit against them in court could not interrupt prescription.  However, the court reasoned, the manufacturer and designer in the present case were not health care providers subject to the MMA:  "Since neither Acromed nor Dr. Steffee [the designer] are within the statutory definition of a health care provider, the suit filed against them by Plaintiffs was timely and operates as a valid interruption of prescription as to them and any other entity which may be a solidary tortfeasor."  Coleman v. Acromed Corp., 764 So.2d 81, 84 (La. App. 2 Cir. 1999), referencing La. C.C. art. 1799 and Billiot v. American Hospital Supply Corporation, 721 F.2d 512 (5th Cir.1983).

In Geiger v. State ex rel. Dept. of Health and Hosp., 812 So.2d 669 (La.App. 1 Cir. 2001), plaintiffs alleged damages resulting from a defective product and malpractice by a hospital.  The damages occurred on July 14, 1992, and plaintiffs filed suit in district court

against all defendants on July 14, 1993, alleging solidary liability.  The claims against the

hospital were dismissed without prejudice based on prematurity because no claim had

been filed before the medical review panel.  Prior to the dismissal, plaintiffs filed an

untimely request for a medical review panel against the hospital on August 20, 1993.  The

case against the non-health care provider defendants was dismissed with prejudice in

1995, and within one year after that, plaintiffs filed a separate suit against the hospital two

weeks after the medical review panel issued its opinion.  The hospital argued the claim

was prescribed. In finding the claim not prescribed, the First Circuit discussed Coleman v.

Acromed Corp., 764 So.2d 81 (La.App. 2 Cir. 1999), and reasoned as follows:

> In the instant case, the plaintiffs' suit in district court against relators would
> not serve to interrupt prescription if it were against them alone because the
> claim with the medical review panel was not filed within the one year
> period so as to suspend prescription. However, unlike LeBreton, the
> plaintiffs also sued the manufacturers of the Johnny Jump Up in products
> liability and alleged the manufacturers and the relators are solidarily liable.
> * * *
> The limiting provisions applicable to qualified health care providers under
> the Louisiana Medical Malpractice Act are "special legislation in
> derogation of the rights of tort victims," and are strictly construed. Spradlin
> v. Acadia-St. Landry Med. Found., 98-1977, p. 6 (La.2/29/00), 758 So.2d
> 116, 120. The products liability defendants are not qualified health care
> providers and, therefore, are not subject to the formalities of the Louisiana
> Medical Malpractice Act. A timely products liability suit filed against these
> defendants operates as a valid interruption of prescription as to them and
> any other solidary tortfeasor. See LSA-C.C. art. 2324.

Geiger v. State ex rel. Dept. of Health and Hosp., 812 So.2d at 671-72.

Writs were granted by the Louisiana Supreme Court in Geiger to "consider the

effect of LeBreton on a timely-filed products liability suit alleging solidarity with the

29

medical malpractice defendants." Geiger v. State ex rel. Dept. of Health & Hosp., 801 So.2d 1069 (La.2001).  However, when the matter was heard before the Louisiana Supreme Court, the parties did not dispute that the products liability suit was untimely and agreed that prescription was not interrupted by an untimely-filed products liability suit alleging solidarity with the malpractice defendants.  Therefore, the Supreme Court did not resolve the issue, but remanded for determination of when the plaintiffs discovered the alleged malpractice to determine whether their claim before the medical review panel was timely.

In Jarrell v. West Jefferson Medical Center, 956 So. 2d 5 (La.App. 5 Cir. 2007), plaintiff argued his timely filed workers compensation claim against his employer interrupted prescription against a solidarily liable physician.  A medical review panel had been timely filed and an opinion rendered, but plaintiff did not file his claim in court within 90 days as required by the MMA.  The court remanded to district court for a determination of whether plaintiff timely filed his workers' compensation suit so that prescription was interrupted on his claims against the physician.  The dissent in this case argued that under LeBreton, plaintiff's claims were prescribed as the specific medical malpractice suspension provisions applied, and not the codal articles on interruption.

The cases reviewed by the Parrish and Landry courts that found general codal articles on interruption of prescription inapplicable were in the Louisiana Third and Fourth circuits.

30

In Borel v. Young, 947 So.2d 824 (La.App. 3 Cir. 2006), plaintiffs timely filed claims before a medical review panel against physicians and a hospital.  After the medical review panel issued its opinion, plaintiffs filed suit in court under the timelines of the MMA, but only against the hospital.  Several years later, plaintiffs sought to add the physicians to the suit.  The Third Circuit found the timely filed suit against the hospital did not interrupt prescription of the claims against the joint tortfeasor physicians, holding as follows:

> We find LeBreton clearly overruled the prior jurisprudence which applied the general provisions on interruption of prescription to a medical malpractice case and held the more specific provision found in the MMA controls the time in which suit must be filed against health care providers covered by the Act.

Borel, 947 So. 2d at 830 (La.App. 3 Cir. 2006).

In  Mitchell v. Rehabilition Institute of New Orleans, Inc., 953 So. 2d 75 (La.App.4 Cir. 2007), the court, citing Bush v. National Health Care of Leesville, 939 So. 2d 1216 (La. 2006), held that filing a lawsuit in court against a non-qualified health care provider did not interrupt prescription of the claims against a solidary obligor who was a qualified health care provider.  The qualified health care provider was required to timely file for review before a medical review panel under La.R.S. 40:1299.39.1(B)(1)(a)(I).

In Yen v. Avoyelles Parish Police Jury, 971 So.2d 536 (La.App.3 Cir. 2007) plaintiffs, survivors of a decedent prisoner timely filed suit against several governmental defendants in state court and also timely filed a claim before a medical review panel

31

against the hospital.[28]  However, it was later determined that the claims against the
hospital were not required to be filed before a medical review panel.  Plaintiffs amended
their state court petition to add the hospital as a defendant.  The court calculated the
addition of the hospital was untimely, finding that under the Louisiana Supreme Court
cases of  LeBreton and Bush and the Fourth Circuit case of Mitchell, timely suit against
the governmental defendants did not interrupt prescription against their solidary obligor,
the hospital.

     The case was ultimately remanded by the Louisiana Supreme Court for
reconsideration in light of Borel v. Young, 989 So.2d 42 (La. 2007)(on rehearing) and its
ruling that La.R.S. 9:5628 is prescriptive, not peremptive, and therefore subject to
possible interruption or suspension.  On remand, the claims against the hospital were
ruled timely, not because prescription was interrupted by suit against the hospital's
solidary obligors, but because having filed a claim before the state medical review panel,
improperly or not, the court was bound to apply the suspensive periods of La. R.S.
40:1299.39.1(A)(2)(a)(c) and (B)(3).  On remand, the Yen court stated as follows:

> We find it dispositive of the exception of prescription that a panel was in
> fact convened regardless of whether the convention was later found to be
> improper.  The dismissal of the panel triggered the 96-day countdown
> within which plaintiffs were required to file suit against HPL.  The

---

[28] The claim was filed before a medical review panel convened pursuant to the Medical
Liability for State Service Act (MLSSA), La.R.S. 40:1299.39, et seq.  The court found "the
jurisprudence interpreting the suspension provisions of the MMA also applies to the MLSSA."
See Yen v. Avoyelles Parish Police Jury, 5 So.3d 1002, 1005 (La.App. 3 Cir. 2009).

amendment of the original suit was filed within the 96-day period.
Therefore, plaintiffs' claims were preserved.

Yen v. Avoyelles Parish Police Jury, 5 So.3d 1002, 1007 (La.App. 3 Cir. 2009).

After review of the these cases, both the Eastern and Western district federal courts Parrish and Landry, respectively, *Erie* guessed that the Louisiana Supreme Court would follow the Third and Fourth circuits and hold that a timely filed suit against a non-health care provider defendant alleged to be solidarily liable with a defendant subject to the special provisions of the  MMA would *not* interrupt prescription on the claims against a health care provider subject to the suspension provisions of the MMA.

In Parrish, the court reasoned that under LeBreton, finding otherwise would "write out" the special suspension provisions of the MMA applicable to qualified health care providers.  In Landry, the court reasoned similarly, but emphasized the facts of the Louisiana Supreme Court case of Bush v. National Health Care of Leesville, 939 So.2d 1216 (La. 2006), relied on by the Fourth Circuit in Mitchell v. Rehabilitation Institute of New Orleans, Inc., 953 So.2d 75 (La.App. 4 Cir. 2007) and Yen v. Avoyelles Parish Police Jury, 971 So.2d 536 (La.App. 3 Cir. 2007).

In Bush, a timely suit had been filed in court against a qualified health care provider who was a doctor, and an alleged solidarily liable non-qualified hospital. Plaintiff subsequently filed an untimely claim against the doctor before a medical review panel.  Within 90 days after the medical review panel issued its opinion, plaintiff filed a claim in court against the doctor, who filed an exception of prescription.  Meanwhile, the

hospital filed a motion for summary judgment arguing the plaintiff had failed to produce any evidence of negligence on its part which the court granted.  In response, the doctor argued he was not a solidary obligor with the hospital, and therefore, the timely filing of the claim against the hospital did not interrupt prescription.

In its decision, the Louisiana Supreme Court did not directly address the issue of whether or not the claim against the hospital interrupted prescription on the claims against the doctor.  However, based on the result, the court apparently concluded it did not, although it is not clear whether it so concluded because the suit could not have interrupted at its inception or because the doctor and hospital ultimately were determined not solidarily liable.  The court held LeBreton applied retroactively, and therefore, the premature claim filed against the doctor in court did not interrupt prescription on the untimely claim against the doctor before the medical review panel.  Therefore, plaintiff's claims were prescribed.

Subsequent jurisprudence in the Lousiana Fifth Circuit has applied the suspension provisions of the MMA to a drug manufacturer alleged to be solidarily liable with a qualified health care provider against whom a claim was properly filed before the medical review panel, and who was later timely sued in district court.  See Kampmann v. Mason, 7 So.3d 675 (La.App. 5 Cir. 2009).  The Fourth Circuit has also reiterated that filing a claim in court against a non-MMA qualified health care provider does not interrupt prescription against MMA qualified health care providers against whom requests for

34

review under the provisions of the MMA must be filed within one year.  See <u>Dowl v. Redi Care Home Health Ass'n</u>, 31 So.3d 596, 605 (La. App. 4 Cir. 2010)(writ denied), following <u>Mitchell v. Rehabilitation Institute of New Orleans, Inc.</u>, 953 So.2d 75, 79-80 (La.App. 4 Cir. 2007).

In addition, the more recent Supreme Court cases of <u>Borel v. Young</u>, 989 So.2d 42 (La. 2007)(on rehearing) and <u>Warren v. Louisiana Medical Mut. Ins. Co.</u>, 21 So.3d 186 (La. 2008)(on rehearing), support an *Erie* guess that suit against the alleged solidarily liable governmental defendants does not interrupt prescription against *Advantage*.  Since <u>LeBreton</u>, prescription in medical malpractice cases has been significantly contested.  In both <u>Borel</u> and <u>Warren</u> the Louisiana Supreme Court granted rehearings and reversed itself.

In <u>Borel v. Young</u>, 989 So.2d 42 (La. 2007), in its original opinion, the Louisiana Supreme Court found the three year time period of La.R.S. §9:5628 was peremptive, thus not subject to interruption.  Therefore, it did not reach the issue of the whether the MMA's suspensive provisions were exclusive of codal provisions governing interruption of prescription as found by the appellate court.  Justices Calogero and Johnson dissented, both opining that the three year period of La.R.S. §9:5628 had been held prescriptive by a long line of jurisprudence, and furthermore, that the appellate court's application of the special provisions of the MMA instead of the general rules on interruption of prescription was erroneous:

Finally, I would note that this case involves exactly the type of factual situation where interruption of prescription is appropriate. This court has stated that "when a petition notifies a defendant that legal demands are made for a particular occurrence, prescription is interrupted." Parker v. Southern American Ins. Co., 590 So.2d 55, 56 (La.1991). In this case, Dr. Young received notice of plaintiffs' claims against him when he was named in the plaintiffs' request for a medical review panel. Thus, the medical malpractice action later filed against him was hardly a surprise.

I would reverse the decision of the court of appeal, deny the defendant's exception of prescription, and remand to the district court for further proceedings. Thus, I dissent from the majority's decision affirming the court of appeal.

Borel, 989 So. 2d at 53.

On rehearing, the court held that both the one-year and three-year limitation periods in La.R.S. 9:5628 are prescriptive. The Court also held "the holding in LeBreton clearly stands for the principle that medical malpractice claims are governed by the specific provisions of the Medical Malpractice Act regarding suspension of prescription to the exclusion of the general codal articles on interruption of prescription" and "that holding is broad enough to extend to the instant case." Borel, 989 So.2d at 67.[29] The court adopted the appellate court's reasoning that a timely suit filed in court after the opinion by the medical review panel against one defendant does not interrupt prescription on the claims against the other defendants. Instead, the plaintiff was obligated to timely file his claims under the suspensive provision of the MMA against each defendant.

---

[29]Borel specifically stated that "[t]he specific provisions of the Medical Malpractice Act are found in LSA-R.S. 40:1299.41(G) and LSA-R.S. 40:1299.47(A)(2)(a)." Borel, 989 So.2d at 68.

In the original opinion of <u>Warren v. Louisiana Medical Mut. Ins. Co.</u>, 21 So.3d 186 (La. 2008), the court found that La.Code Civ. Proc. art. 1153 allowed  the untimely addition of a plaintiff to a wrongful death claim due to medical malpractice to relate back and interruption of prescription was available on the survival claim.  On rehearing, the court reversed itself and held that the general codal articles on interruption of prescription, La. C.C. arts. 3462, 1799, and 3503, could not apply in a medical malpractice action subject to the specific provisions of the MMA.  In addition,  La. C.C.P. art 1153, allowing "relation back," could not be applied in medical malpractice actions. The court in <u>Warren</u> on rehearing was very adamant that the special provisions of the MMA  apply to medical malpractice claims, not the general codal articles on interruption of prescription or *any other general codal article*.  The reasoning of the Court was as follows:

> In reviewing our opinion on original hearing, we see that it is contrary to <u>Borel</u> in two respects. First, on original hearing this Court relied on <u>Williams</u>, supra, to hold that because Sarah shared her survival cause of action with her mother and sister, prescription on that cause of action was interrupted when Sarah's mother and sister timely filed suit. However, while <u>Williams</u> held that the general codal articles on interruption of prescription, La. C.C. art. 3462, 1799, and 3503, applied such that suit against one solidary obligor interrupted prescription against another solidary obligor, <u>Williams</u> was not a medical malpractice action. For had it been a medical malpractice action, <u>Borel</u> would dictate that the specific provisions of the Act apply to the exclusion of the general code articles on interruption of prescription against solidary obligors, just as the specific provisions of the Act regarding suspension of prescription applied to the exclusion of the general code article on interruption of prescription against joint tortfeasors under <u>Borel</u>. Because the holding of <u>Williams</u> has no application in the medical malpractice area and its application in that area is contrary to <u>Borel</u>,

we erred in relying on Williams on original hearing to hold that Sarah's survival claim had not prescribed.

Secondly, our holding on original hearing that the amended pleading adding a new plaintiff after the expiration of the prescriptive period related back to the timely filing of the original petition pursuant to La. C.C.P. art. 1153 is contrary to Borel, as well as to LeBreton. La. C.C.P. art. 1153 provides that "[w]hen the action or defense asserted in the amended petition or answer arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of filing the original pleading." LeBreton and Borel stand for the proposition that medical malpractice claims are governed by the specific provisions of the Medical Malpractice Act regarding suspension of prescription to the exclusion of the general codal articles on interruption of prescription. These cases are equally applicable here. The expressed reasoning behind the holding in LeBreton was that if the general rules on interruption were to apply to a medical malpractice action, "then the prescription and suspension provisions provided in the Medical Malpractice Act will be written out," and "[t]herein lies the conflict." LeBreton, supra at 1230. Although La. C.C.P. art. 1153 does not "interrupt" prescription as did the general codal articles in LeBreton and Borel, "relation back" of an untimely filed amended petition directly avoids the application of prescription by allowing a claim that would have otherwise prescribed to proceed. The effect of this interference is that if relation back is allowed, the "prescription and suspension provisions provided in the Medical Malpractice Act will be written out," which, as we recognized in LeBreton, presents "a conflict." LeBreton, supra at 1230. Further, the application of La. C.C.P. art. 1153 "would potentially subject a health care provider to an indefinite period of prescription, ... a result clearly at odds with the purpose of the [Act]." Borel, supra at 68, n. 12. *Because medical malpractice actions are governed by the specific provisions of the Act regarding prescription and suspension of prescription, under Borel, we find that any general codal article which conflicts with these provisions may not be applied to such actions in the absence of specific legislative authorization in the Act.* The Act has no rules allowing relation back of pleadings for medical malpractice claims. The application of Article 1153 would permit the adding of an plaintiff subsequent to the expiration of the three-year period provided for in La. R.S. 9:5628, and would read out of the statute the prescription and suspension period provisions by La. R.S. 9:5628 and La. R.S. 40:1299.47; therefore, La. C.C.P. art. 1153 may not be applied to the

38

medical malpractice action under the reasoning of LeBreton and Borel. Warren, 21 So. 3d at 206 - 208. (Emphasis added).

Thus, the undersigned concludes that the Louisiana Supreme Court has consistently shielded qualified health care providers subject to the provisions of the MMA from application of any laws that contradict, expand, or make confusing the application of those specialized provisions in the MMA governing timeliness of claims.

A review of Louisiana law shows that when a health care provider is qualified and the MMA's provisions are applicable, the specific provisions of the MMA governing suspension of prescription are applicable to the exclusion of the general codal articles on interruption of prescription, or relation back of amendments, or in fact, any other general codal provision that would result in the "prescription and suspension provisions provided in the Medical Malpractice Act [to be] written out." Warren, 21 So. 3d at 207, citing LeBreton, 714 So.2d at 1230.

It is undisputed that Advantage is subject to the special provisions of the MMA and that application of the more general codal articles governing interruption of prescription would allow the "prescription and suspension provisions provided in the Medical Malpractice Act [to be] written out."  Warren, supra, citing LeBreton.  Thus, the undersigned concludes that if presented with the question "does a timely filed suit against a non-health care provider defendant alleged to be a solidary obligor interrupt prescription as to a health care provider defendant covered by the MMA?," the Louisiana Supreme

39

Court would likely answer "no" and find plaintiff's claims against Advantage, which were brought before a medical review board more than one year after the alleged malpractice, are prescribed.

2)      *Does a timely filed suit against a non-health care provider defendant alleged to be a solidary obligor interrupt prescription as to a health care provider defendant not covered by the MMA?*

It is undisputed that Nursefinders is not a qualified health care provider under the MMA, and as such plaintiff was not required to file a claim against it before a medical review panel prior to filing suit in federal court.  Moreover, plaintiff did not timely file a claim before a medical review panel against Advantage or against Nursefinders, and therefore the special provisions of the MMA governing suspension of prescription did not become "activated" and thus are completely inapplicable to Nursefinders under this factual situation.[30]

The Louisiana Supreme Court in LeBreton v. Rabito, 714 So.2d 1226 (La.1998), on which all of cases discussed in the prior section rely, expressly excluded non-qualified health care providers from its reasoning:

---

[30]See Kampmann v. Mason, 7 So.3d 675 (La.App. 5 Cir. 2009), where the court applied the MMA's prescriptive and suspensive provisions to a manufacturer defendant to find the claims prescribed.  The claim against the manufacturer had not been timely filed in court.  However, a claim had been timely filed before the medical review panel against a qualified health care provider co-defendant, who subsequently timely filed his claim in court after the opinion o f the medical review panel was issued.  However, several years later, plaintiff attempted to add the manufacturer.  The court found the claims prescribed under the MMA.  A claim against another manufacturer filed in district court had been dismissed.  Therefore, the court reasoned prescription was not interrupted, either.

Keeping in mind Plainiol's explanation for the underlying need for the principle of suspension, it is evident that the Louisiana Medical Malpractice Act took cognizance of the need to suspend prescription and fully protects plaintiffs who would otherwise suffer the detrimental effect of liberative prescription. . . Thus, considering the doctrinal underpinnings for the existence of the rules of suspension, it is evident that there is no need for the general rules of interruption of prescription to combine with suspension to synergistically benefit the plaintiff.*FN7*

> *FN7. As regards the non-qualified health care provider and cases not involving medical malpractice, La.Civ.Code art. 3462, the general provision, provides for interruption of prescription.*

LeBreton, 714 So.2d at 1231, FN 7. (Emphasis added).

The undersigned has been pointed to and found no authority subsequent to and in conflict with LeBreton's instruction that the general codal provisions providing for interruption of prescription apply to non-qualified health care providers and claims not involving medical malpractice.  The only reference to LeBreton's footnote the undersigned has found is itself a footnote in the appellate court ruling in Borel, 947 So.2d 824 (La.App. 3 Cir. 2006).  The Third Circuit, discussing and citing the holding in LeBreton, recognized LeBreton's footnoted exception:

> In a footnote, the supreme court noted: "As regards the non-qualified health care provider and cases not involving medical malpractice, La.Civ.Code art. 3462, the general provision, provides for interruption of prescription." LeBreton, 714 So.2d at 1231. That situation arose in Coleman v. Acromed Corp., 32,590 (La.App. 2 Cir. 12/15/99), 764 So.2d 81, where the Second Circuit found La.Civ.Code art. 3462 interrupted prescription as to a non-qualified health care provider when the claim was based in products liability. Finding LeBreton inapplicable, the Second Circuit allowed the plaintiff to bring a qualified health care provider into the timely-filed district court suit well beyond ninety days.

41

Borel v. Young, 947 So.2d 824, 829, FN7 (La.App. 3 Cir. 2006).

The Louisiana Supreme Court in Borel, 989 So.2d 42 (La. 2007), did not mention the appellate court's footnote in its decision.  The undersigned has reviewed Coleman v. Acromed Corp., 764 So.2d 81 (La.App. 2 Cir. 1999), and does not necessarily agree with the appellate court in Borel that Coleman was the result of  LeBreton's footnote.  In Coleman, the health care providers seeking to have their claims declared prescribed were in fact qualified health care providers subject to the MMA.  Plaintiff had timely filed the claims against them before a medical review panel and received an opinion.  The problem was plaintiff filed the claims against them in court more than 90 days later, tardy under the provisions of the MMA.  The Coleman court never mentioned the LeBreton footnote, but instead stated "[s]ince neither  Acromed nor Dr. Steffee [the designer] are within the statutory definition of a health care provider, the suit filed against them by Plaintiffs was timely and operated as a valid interruption of prescription as to them and any other entity which may be a solidary tortfeasor."  Coleman, 764 So.2d at 84, citing La.C.C. art. 1799 and Billiot v. American Hospital Supply Corporation, 721 F.2d 512 (5th Cir. 1983).[31]  In other words, the Coleman court applied the codal articles on interruption of prescription, even where the defendants seeking to have plaintiff's claims against them found

---

[31]In Billiot, the Fifth Circuit relied upon a Louisiana Fourth Circuit case, Chalstrom v. Desselles, 443 So.2d 866 (La.App. 4t Cir. 1983), to find suit against a solidarily liable manufacturer interrupted prescription against a medical provider.  There is no discussion in either of these cases of the MMA and whether the health care provider was subject to its provisions or not.  These cases were issued prior to LeBreton and not persuasive.

prescribed were subject to the MMA's special suspensive provisions.[32]

The undersigned interprets the LeBreton footnote to mean that, because the suspension provisions of the MMA are not applicable  to claims against non-qualified providers (or to any health care providers sued under some theory other than malpractice), suit against one of their solidary obligors interrupts prescription against them. As a consequence, plaintiffs may still be protected from prescription running with undue swiftness on their claims against non-qualified providers or claims not based in malpractice to whom the provisions of the MMA are not available.[33]

In addition to the text of LeBreton, the undersigned finds the concerns in LeBreton, Borel, and Warren are not implicated in this matter as to Nursefinders.  That is, application of the general codal article on interruption of prescription, La. Civ. Code art. 3462, to the claims filed by plaintiffs against the governmental defendants to interrupt prescription on the claims against Nursefinders will not cause the "prescription and suspension provisions provided in the Medical Malpractice Act [to be] written out" as the provisions of the MMA are not applicable to Nursefinders directly as a qualified health care provider or indirectly through any timely claim filed against it (improperly) or

---

[32]The undersigned notes that three Justices would have granted defendant's application for writs to the Louisiana Supreme Court in Coleman.

[33]While the MMA provides that when a claim against a qualified provider is filed before a medical review panel prescription is suspended as to all of the provider's solidary obligors, there are times when either no such claim is filed, or the claim is untimely filed so that prescription has already run and cannot be suspended, as in this matter.

against Advantage (properly) before a medical review panel.

Therefore, the undersigned finds the plaintiff's timely lawsuit against the governmental defendants, alleged as solidarily liable with Nursefinders, interrupted prescription against Nursefinders under La. Civ. Code art. 3462 and plaintiff's claims against Nursefinders are not prescribed.

### Conclusion and Recommendation

For the reasons given above, the undersigned finds the claims against Advantage and its employees are prescribed and the claims against Nursefinders and its employees are not prescribed.

Therefore,

**IT IS RECOMMENDED** that Advantage Nursing Services, LLC and Cynthia Wiltz, LPN's Rule 12(b)(6) Motion to Dismiss for Prematurity and/or Prescription (Rec. Doc. 25) and Advantage Nursing Services, Inc.'s Rule 12(b)(6) Motion to Dismiss for Prematurity and/or Prescription (Rec. Doc. 34) be **GRANTED** and all claims filed against Advantage Nursing Services, LLC, Advantage Nursing Services, Inc., and Cynthia Wiltz, LPN be **DISMISSED WITH PREJUDICE;**

**IT IS FURTHER RECOMMENDED** that Nursefinders, Inc.'s Rule 12(b)(6) Motion to Dismiss Based on Prescription (Rec. Doc. 41) be **DENIED**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this

report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.  See, *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir.  1996).**

Lafayette, Louisiana, this 2nd day of March, 2011.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)